FILED
1/17/2023 11:28 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00444
Calendar, 3
21065504

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BCH5036, LLC, an Illinois limited liability company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SHERIDAN MAZEL, LLC, a New York limited | ) |
| liability company; and | ) |
| AREIT 2022 CRE7, LLC, a Delaware limited liability | ) |
| company, | ) |
| | ) |
| Defendants. | ) |

2023CH00444

## COMPLAINT

NOW COMES Plaintiff BCH5036, LLC ("BCH5036"), through its undersigned attorneys,

complaining of Defendants SHERIDAN MAZEL, LLC ("Sheridan Mazel") and AREIT 2022

CRE7, LLC ("CRE7"), (collectively, "Defendants"), and states as follows:

### NATURE OF THE ACTION

1.      Sheridan Mazel, and its related entities, agreed to purchase four (4) apartment

buildings from BCH5036, and its related entities, in early 2022.  The parties made a mutual mistake

in including in the transfer document a parking lot located at 5042 North Sheridan Road, Chicago,

Illinois, which the parties never intended to transfer and for which Sheridan Mazel never paid.

Once BCH5036 discovered the parties' mutual mistake, it brought it to Sheridan Mazel's attention

and requested Sheridan Mazel to reform the transfer document. Sheridan Mazel refused, and refuses,

to reform the transfer document, return the parking lot, turn over rents from the parking lot, and

otherwise continues to wrongfully withhold both the parking lot and the rents from BCH5036.

FILED DATE: 1/17/2023 11:28 AM    2023CH00444

## BACKGROUND

2.      BCH5036 is an Illinois limited liability company, with its principal place of business located in Cook County, Illinois.

3.      Sheridan Mazel is a New York limited liability company, with its principal place of business located in Chestnut Ridge, New York, but registered to do business in Illinois with the Illinois Secretary of State.

4.      CRE7 is a Delaware limited liability company, with its principal place of business located in New York, New York.

5.      On or about November 3, 1998, Cameel Halim became the owner of the real property commonly known as 5042 North Sheridan Road, Chicago, Illinois, permanent index number 14-08-406-012-0000 and legally described as:

> LOT 22 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) IN BLOCK 6 IN ARGYLE, A SUBDIVISION OF LOTS 1 AND 2 IN FUSSEY AND FENNIMORE'S SUBDIVISION OF THE SOUTHWEST ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN AND OF LOTS 1 AND 2 IN COLEHOUR AND CONARROES SUBDIVISION OF LOT 3 IN FUSSEY AND FENNIMORES SUBDIVISION AFORESAID, ALL IN COOK COUNTY, ILLINOIS

("5042 Sheridan").

6.      On or about November 3, 1998, Mr. Halim also became the owner of the real property commonly known as 5036 North Sheridan Road, Chicago, Illinois, permanent index number 14-08-406-013-0000 and legally described as:

> LOT 21 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) IN BLOCK 6 IN ARGYLE, A SUBDIVISION OF LOTS 1 AND 2 IN FUSSEY AND FENNIMORE'S SUBDIVISION OF THE SOUTHWEST ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN AND OF LOTS 1 AND 2 IN COLEHOUR AND CONARROES SUBDIVISION OF LOT 3 IN FUSSEY AND FENNIMORES SUBDIVISION AFORESAID, ALL IN COOK COUNTY, ILLINOIS

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

("5036 Sheridan").

7.      On or about August 16, 2004, Mr. Halim quit claimed his right, title, and interest in both 5042 Sheridan and 5036 Sheridan to BCH5036, of which Mr. Halim is the managing member.

8.      5036 Sheridan includes a building with 71 units consisting of commercial spaces on the ground floor and residential apartments above.

9.      5042 Sheridan is a vacant lot which is operated as a parking lot and contains no apartments, nor any portion of any apartment building.

10.      In or about 2021, BCH5036 advertised the sale of 5036 Sheridan and distributed flyers related to the listing (the "Sales Flyer").  A true and accurate copy of BCH5036's sales flyer for 5036 Sheridan is attached hereto as **Exhibit 1**.

11.      The Sales Flyer identifies the 5036 Sheridan apartment building, the 71 units comprising the building, and the income and expenses related thereto.  The Sales Flyer does not offer for sale 5042 Sheridan, nor any of the parking spaces located at the 5042 Sheridan property.

12.      On November 8, 2021,  an entity named Rockwood Capital Group, LLC ("Rockwood Capital"), presented BCH5036 with a letter of intent (the "LOI"), relating to Rockwood Capital's (or its designee) proposed purchase of 5036 Sheridan from BCH5036, along with other apartment buildings separately owned by Mr. Halim's other entities, including the apartment buildings located at 7340 North Hoyne, Chicago, Illinois ("7340 Hoyne"), 915 West Carmen, Chicago, Illinois ("915 Carmen"), and 1716 West North Shore, Chicago, Illinois ("1716 North Shore").  A true and accurate copy of the LOI is attached hereto as **Exhibit 2**.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

13.     The LOI is addressed to the "Owner of Record" of "5036 N Sheridan" and sets forth Rockwood Capital's intent to acquire the "units located at  *** 5036 N. Sheridan" and the basic terms thereof.  (**Ex. 2**)  The LOI does not mention 5042 Sheridan or the parking lot thereon.

14.     On or about November 11, 2021, BCH5036 agreed to Rockwood Capital's LOI and the proposed purchase of the 5036 Sheridan apartment building.

15.     Thereafter, the attorneys for BCH5036 and Rockwood Capital's nominee, YHCHILL Portfolio, LLC ("YHCHILL"), began negotiating the terms of a purchase agreement for 7340 Hoyne, 915 Carmen, 1716 North Shore, and 5036 Sheridan (the "Subject Properties").

16.     Between November 23, 2021 and January 5, 2022, multiple drafts of a proposed purchase agreement for the Subject Properties were exchanged between the attorneys for BCH5036 and YHCHILL.  Every draft of the proposed purchase agreement described 5036 Sheridan as "the apartment building located at 5306 North Sheridan, Chicago, Illinois".

17.     On or about December 8, 2021, the attorney for YHCHILL sent a revised draft of the proposed purchase agreement to counsel for BCH5036 which included an unexplained reference to "parking facilities", but this language was stricken from the draft by BCH5036 and was never reintroduced in the purchase agreement negotiations.

18.     During the negotiations of the purchase agreement, there was no discussion between the attorneys related to any parking being included in the transfer of any of the Subject Properties, including 5036 Sheridan.

19.     On or about January 5, 2022, BCH5036 and YHCHILL entered into a final purchase agreement for the Subject Properties (the "Purchase Agreement").  A true and accurate copy of the Purchase Agreement is attached hereto as **Exhibit 3**.

4

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

20.     The Purchase Agreement included an Exhibit A, which was supposed to be the legal descriptions of the Subject Properties.  However, the legal description for 5036 Sheridan mistakenly included the words "and Lot 22".

21.     The legal description for 5036 Sheridan included in the Purchase Agreement appears to have been copied directly from prior deeds transferring both 5036 Sheridan and 5042 Sheridan, which lumped both properties together.

22.     5036 Sheridan and 5042 Sheridan have two distinct addresses, two distinct legal descriptions, and two distinct permanent index numbers.  The separate legal descriptions of the parcels, as certified by the Cook County Clerk, are attached hereto as **Group Exhibit 4**.

23.     The Purchase Agreement describes BCH5036 as "the owner of the apartment building located at 5036 North Sheridan, Chicago, Illinois" and neither YHCHILL nor BCH5036 noted the mistaken inclusion of "and Lot 22" in the legal description set forth on Exhibit A of the Purchase Agreement.

24.     After the execution of the Purchase Agreement, YHCHILL began performing its due diligence with respect to the Subject Properties, as set forth in the Purchase Agreement.

25.     As a part of its due diligence, YHCHILL requested copies of the surveys for the Subject Properties, the leases for the Subject Properties, and the rent rolls for the Subject Properties, including 5036 Sheridan.

26.     The survey provided to YHCHILL by BCH5036 for 5036 Sheridan included only the apartment building located at 5036 Sheridan; no part of 5042 Sheridan is reflected in the survey. A true and accurate copy of the survey is attached as **Exhibit 5**.

27.     The rent rolls and leases provided to YHCHILL included only leases and rents for the 5036 Sheridan apartment building.  The rentals for the parking lot at 5042 Sheridan were

5

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

specifically excluded from the documents provided as a part of the due diligence period.  A true and accurate copy of the rent roll provided to YHCHILL, excluding 5042 Sheridan's parking rents, is attached hereto as **Exhibit 6**.

28.     Because 5042 Sheridan was never intended by the parties to be a part of the Subject Properties, nor intended to be included in the transfer from BCH5036, YHCHILL said nothing about the exclusion of the parking rents, did not demand parking leases, and did not demand a separate survey for 5042 Sheridan.

29.     Upon conclusion of YHCHILL's due diligence with respect to the Subject Properties, a closing was scheduled to transfer the Subject Properties, on or about March 28, 2022.

30.     Pursuant to the Purchase Agreement, YHCHILL or its assignee, was to receive the Subject Properties in exchange for the agreed upon purchase price.

31.     As a part of the Purchase Agreement, YHCHILL was permitted to select the title company that would issue the title commitment for the transfer of 5036 Sheridan.

32.     YHCHILL's selected title company, Meister Abstract Corporation ("Meister"), located in New York, issued a title commitment for three (3) of the four (4) Subject Properties.  The Meister title commitment also mistakenly included "and Lot 22" in its legal description for 5036 Sheridan, and further mistakenly added the 5042 Sheridan address as a part of its title commitment. Neither YHCHILL nor BCH5036 noted the addition of the 5042 Sheridan address or the continued mistaken inclusion of "and Lot 22" in the legal description.

33.     Prior to the closing, YHCHILL assigned the Purchase Agreement, and all of YHCHILL's rights and obligations under the Purchase Agreement, to Sheridan Mazel.

34.     As a part of the closing, a warranty deed was prepared for the transfer of 5036 Sheridan from BCH5036 to Sheridan Mazel (the "Deed") by a paralegal employed by the attorneys for BCH5036.

35.     Despite the parties' intention to only transfer the apartment building at 5036 Sheridan, as demonstrated by the listing for 5036 Sheridan, the LOI, the parties' negotiations, the survey, and the other due diligence documents requested by the purchaser and provided by the seller, the Deed again mistakenly included "and Lot 22" in the legal description for 5036 Sheridan and, relying on the title commitment prepared by Meister, mistakenly added the 5042 Sheridan address and the permanent index number for 5042 Sheridan.  A true and accurate copy of the Deed is attached as **Exhibit 7**.

36.     Sheridan Mazel never paid any additional consideration for 5042 Sheridan.

37.     The inclusion of "and Lot 22", the 5042 Sheridan address, and the 5042 Sheridan permanent index number in the Deed was a scrivener's error and did not reflect the intentions of the parties.

## COUNT I – REFORMATION

38.     BCH5036 re-alleges and incorporates Background Paragraphs 1-37 as Paragraph 38 of this Count I, as though fully set forth herein.

39.     BCH5036 did not immediately realize that there had been a mutual mistake made by the parties in the legal description of 5036 Sheridan and the mistaken inclusion of 5042 Sheridan in the Deed.

40.     BCH5036 did not realize that the parties had made the mistake until some of its parking lot tenants stopped paying their rent for the parking lot at 5042 Sheridan.

7

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

41.     Once BCH5036 investigated the reason for the missing rent payments, it contacted Sheridan Mazel in an effort to correct the mistake.

42.     Sheridan Mazel refused to correct the scrivener's error in the Deed and return 5042 Sheridan to BCH5036.

43.     For several months, BCH5036 attempted to resolve this matter with Sheridan Mazel.

44.     However, by December 2022, it became clear that Sheridan Mazel would refuse to return 5042 Sheridan to BCH5036, refuse to pay for the mistaken and improper transfer of 5042 Sheridan to Sheridan Mazel, and refuse to turn over to BCH5042 the rents received from 5042 Sheridan.

45.     As a part of its purchase of the Subject Properties, Sheridan Mazel obtained financing from Argentic Real Estate Investment, LLC ("Argentic").

46.     On information and belief, Argentic did not rely on the inclusion of 5042 Sheridan or any of its leases or the rents received therefrom, in providing its financing to Sheridan Mazel.

47.     Nevertheless, on or about April 4, 2022, as a result of the parties' continuing mutual mistake in improperly including information related to 5042 Sheridan, Argentic recorded its mortgage, assignment of leases and rents, and a UCC-1 financing statement (collectively, the "Argentic Mortgage Documents") against the Subject Properties, and further recorded these documents against 5042 Sheridan.

48.     On or about April 7, 2022, Argentic assigned its right title and interest in the Argentic Mortgage Documents to AREIT WH III, LLC ("AREIT WH") (the "Argentic Assignments") and on October 26, 2022, recorded the Argentic Assignments against the Subject Properties as well as 5042 Sheridan.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

49.     On or about June 16, 2022, AREIT WH assigned its right title and interest in the Argentic Assignments to Argentic (the "AREIT WH Assignments") and on December 8, 2022, recorded the AREIT WH Assignments against the Subject Properties as well as 5042 Sheridan.

50.     On or about June 16, 2022, Argentic assigned its right, title, and interest in the AREIT WH Assignments to CRE7 (the "CRE7 Assignments") and on December 8, 2022, recorded the CRE7 Assignments, consisting of an assignment of assignment of leases and rents, an assignment of mortgage, and an amended UCC-1 financing statement, each in favor of CRE7, against the Subject Properties as well 5042 Sheridan.

51.     On information and belief, Argentic, AREIT WH, and CRE7 are affiliate or related entities.

52.     The inclusion of 5042 Sheridan in the Deed was a mutual mistake of the parties and the Deed should be reformed to remove 5042 Sheridan and 5042 Sheridan should be returned to BCH5036.

53.     The CRE7 Assignments should further be released from 5042 Sheridan and removed from title to 5042 Sheridan.

54.     As a result of Sheridan Mazel's refusal to correct the Deed, return the 5042 Sheridan rents to BCH5036, and have the CRE7 Assignments removed from title, BCH5036 has been, and continues to be, damaged in the loss of the 5042 Property and the rents generated by the property, as well as the attorney's fees and costs incurred in having to bring and pursue this action.

WHEREFORE, Plaintiff BCH5036, LLC ("BCH5036"), prays that this Honorable Court enter judgment in favor of BCH5036 and against Defendants SHERIDAN MAZEL, LLC ("Sheridan Mazel") and AREIT 2022 CRE7, LLC ("CRE7"), (collectively, "Defendants"), as follows:

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

(a)     Reforming the March 28, 2022 deed recorded against the real property commonly known as 5042 North. Sheridan, Chicago, Illinois ("5042 Sheridan"), and removing all language purporting to include 5042 Sheridan in a transfer to Sheridan Mazel, and ordering the reformed deed to be recorded with the Cook County Clerk, along with any necessary documents to return title to BCH5036;

(b)     Ordering Sheridan Mazel and CRE7 to release and remove CRE7's financing documents from title of 5042 Sheridan and to record all appropriate documents with the Cook County Clerk to effectuate such removal;

(c)     Awarding damages in favor of BCH5036 and against Sheridan Mazel in an amount in excess of $50,000.00 plus costs of suit, and granting BCH5036 such additional and further relief as this Court deems just or to which BCH5036 is otherwise entitled.

### COUNT II—UNJUST ENRICHMENT

54.     BCH5036 re-alleges and incorporates Paragraphs 1-53 as Paragraph 54 of this Count II, as though fully set forth herein.

55.     Sheridan Mazel received the 5042 Sheridan property for no consideration at all.

56.     Sheridan Mazel continues to retain the parking rents from the 5042 Sheridan property for which it did not pay any consideration and to which it is not entitled.

57.     Having knowledge of the mutual mistake of the parties in including 5042 Sheridan in the Deed, rather than correct the error, Sheridan Mazel has retained the property and its rents and refuses return of either to BCH5036.

58.     It is unjust and unfair for Sheridan Mazel to retain the 5042 Sheridan property and its rents, without reimbursing BCH5036 therefor.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

WHEREFORE, Plaintiff BCH5036, LLC ("BCH5036"), prays that this Honorable Court enter judgment in favor of BCH5036 and against Defendant SHERIDAN MAZEL, LLC ("Sheridan Mazel"), in an amount in excess of $500,000.00, and that BCH5036 be awarded its costs of suit, and such additional relief as this Court deems just or to which it is otherwise entitled.

Respectfully submitted,

BCH5036, LLC


By: _____/s/ Monica A. Forte_____
        One of its attorneys

FORTE & ASSOCIATES, LLC
4044 N. Lincoln, #208
Chicago, Illinois 60618
(312) 880-1003
fortelawyers@gmail.com

11

# Apartment Building for Sale
## 5036 N. Sheridan Rd., Chicago, IL

# $9,100,000

FILED DATE: 1/17/2023 1:28 AM  2023CH00444









| Unit Type | Quantity | Rent Range |
|-----------|----------|------------|
| SS | 1 | $670 |
| S | 44 | $804-$979 |
| 1B | 24 | $1,205 |
| Store 1 | 1 | $1,400 |
| Store 2 | 1 | $2,000 |
| **71 Units** | | |



**Sale Price**
**is 11 x Gross Income**

### Projected Income and Expense Analysis

| | | |
|---|---|---|
| Monthly Income @ 100% occupied | = | $68,911 |
| Annual Income @ 100% occupied | = | $826,932 |
| Gross Annual Income @ 95% occupied | = | $785,590 |
| Annual Expenses | = | $294,639 |
| **Net Income** | **=** | **$490,950** |

### Projected Return on Investment
(assume 75% loan @ 3.5% interest)

| | | |
|---|---|---|
| Loan Payment | = | $367,770 |
| Cash Flow | = | $123,180 |
| ROI | = | 5.4% |
| **ROI (interest only loan)** | **=** | **11.1%** |

## Wilmette Real Estate & Management Co.
### Contact Cameel Halim | 847-212-8525 | cmlabd@aol.com

Cooperative Broker to receive commission in the amount of 0.75% of sale price provided they file confidential agreement with Wilmette Real Estate & Management Co. and the transaction is closed.

All information, calculations, and projections contained herin are deemed to be accurate, but accuracy is not guaranteed. Projections on income, return on investment, etc. are intended for illustrative purposes only.  Any prospective buyer should consult with a professional in the respective real estate, tax, accounting, legal, or other professional area before making any decisions with respect to the property described.

EXHIBIT 1

# Projected Income

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

| Apt # | Size | Lease End Date | Rent |
|---|---|---|---|
| 101 | 1B | 01/31/22 | $904.00 |
| 102 | SK | 12/31/21 | $852.00 |
| 103 | S |  | $815.00 |
| 104 | S | 01/31/22 | $804.00 |
| 105 | SK | 12/31/22 | $841.00 |
| 106 | 1B | 01/31/22 | $955.00 |
| 107 | SS | 07/31/22 | $670.00 |
| 201 | 1B | 01/31/22 | $1,099.00 |
| 202 | SK | 10/31/21 | $862.00 |
| 203 | S |  | $825.00 |
| 204 | S | 08/31/22 | $825.00 |
| 205 | SK | 01/31/22 | $849.00 |
| 206 | 1B | 08/31/21 | $1,029.00 |
| 207 | 1B | 04/30/22 | $1,025.00 |
| 208 | S | 12/31/22 | $814.00 |
| 209 | S | 12/31/22 | $844.00 |
| 210 | SK | 11/30/22 | $864.00 |
| 211 | SKD | 12/31/21 | $954.00 |
| 212 | 1B | 09/30/21 | $1,118.00 |
| 301 | 1B | 06/30/22 | $1,140.00 |
| 302 | SK | 08/31/22 | $875.00 |
| 303 | S | 12/31/22 | $820.00 |
| 304 | S | 12/31/22 | $819.00 |
| 305 | SK |  | $870.00 |
| 306 | 1B | 01/31/22 | $994.00 |
| 307 | 1B | 06/30/22 | $1,035.00 |
| 308 | S | 05/31/22 | $849.00 |
| 309 | S | 01/31/22 | $830.00 |
| 310 | SK | 01/31/22 | $894.00 |
| 311 | SKD |  | $944.00 |
| 312 | 1B | 04/30/22 | $1,025.00 |
| 401 | 1B | 05/30/22 | $1,025.00 |
| 402 | SK | 01/31/22 | $872.00 |
| 403 | S | 06/30/22 | $835.00 |
| 404 | S | 01/31/22 | $860.00 |
| 405 | SK | 04/30/22 | $870.00 |
| 406 | 1B | 01/31/22 | $1,095.00 |
| 407 | 1B | 06/30/22 | $1,025.00 |
| 408 | S | 05/31/22 | $835.00 |
| 409 | S | 04/30/22 | $950.00 |
| 410 | SK | 12/31/22 | $880.00 |
| 411 | SKD | 04/30/22 | $964.00 |
| 412 | 1B | 12/31/22 | $1,120.00 |

| Apt # | Size | Lease End Date | Rent |
|---|---|---|---|
| 501 | 1B | 01/31/22 | $1,160.00 |
| 502 | SK | 02/28/22 | $907.00 |
| 503 | S | 08/31/21 | $874.00 |
| 504 | S | 08/31/21 | $855.00 |
| 505 | SK | 05/31/22 | $950.00 |
| 506 | 1B | 05/31/22 | $1,069.00 |
| 507 | 1B | 01/31/22 | $1,069.00 |
| 508 | S | 11/30/21 | $855.00 |
| 509 | S |  | $855.00 |
| 510 | SK | 12/31/22 | $880.00 |
| 511 | SKD | 12/31/22 | $955.00 |
| 512 | 1B | 01/31/22 | $1,120.00 |
| 601 | 1B | 12/31/22 | $1,164.00 |
| 602 | SK | 12/31/22 | $877.00 |
| 603 | S | 06/30/22 | $979.00 |
| 604 | S | 05/31/22 | $855.00 |
| 605 | SK | 04/30/22 | $950.00 |
| 606 | 1B | 05/31/22 | $1,025.00 |
| 607 | 1B |  | $1,110.00 |
| 608 | S | 01/31/22 | $885.00 |
| 609 | S | 11/30/21 | $855.00 |
| 610 | SK |  | $889.00 |
| 611 | SKD | 06/30/22 | $965.00 |
| 612 | 1B | 05/31/22 | $1,153.00 |
| 701 | 1B | 12/31/22 | $1,205.00 |
| 702 | 1B | 07/31/22 | $1,175.00 |
| STORE I | STORE | MTM | $1,400.00 |
| STORE II | STORE | 04/30/24 | $2,000.00 |
|  |  |  |  |
|  |  | **Total:** | **$68,411.00** |
|  |  | Laundry: | $200.00 |
|  |  | Miscellaneous Income: | $300.00 |
|  |  | **Grand Total:** | **$68,911.00** |

| Projected Expenses | |
|---|---|
| Taxes (actual) | $56,805.00 |
| Insurance ($175/unit) | $12,425 |
| Utilities & Trash Removal ($273/unit) | $19,383 |
| Elevator Maintenance Service | $4,691 |
| Pest Control ($45/unit) | $3,195 |
| Janitorial ($600/unit) | $42,600 |
| Repairs & Maintenance ($300/unit) | $21,300 |
| Cleaning & Painting ($170/unit) | $12,070 |
| Administrative ($80/unit) | $5,680 |
| Miscellaneous | $85,883 |
| Management Fees (3%) | $12,857 |
| Capital Reserves ($250/unit) | $17,750 |
| **Grand Total:** | **$294,639** |

DocuSign Envelope ID: 7FCF60922C2C23-4808-AFF4-354D7E3C6EDF



**ROCKWOOD**
CAPITAL GROUP

November 8th, 2021

Owner of Record
7340 N. Hoyne
915 W. CARMEN
1716 North Shore
5036 N Sheridan

**Re: Acquisition units located at 7340 N. Hoyne, 915 W. Carmen, 1716 North Shore & 5036 N Sheridan**

To Mr Cameel Halim:

This letter of intent is submitted by Rockwood Capital Group, LLC or its designee ("Buyer") to <u>Owner of Record</u> ("Seller") for the acquisition from Seller of the above referenced property ("Property"). Purchaser is prepared to enter into negotiations for a binding Purchase and Sale Agreement (the "Agreement") subject to the following terms and conditions.

1. Purchase Price. The purchase price (the "Purchase Price") payable by Buyer to Seller shall be the sum of Twenty-Seven Million Five-Hundred Thousand and no/100 Dollars ($27,500,000) payable in cash at closing.

2. The Contract. Upon execution of this Letter of Intent by both parties, Seller will deliver to Buyer a contract of sale (the "Contract"), the terms of which shall be in substantial conformity with this Letter of Intent. Seller shall not engage in any negotiations nor enter into any agreement to sell the Property within a 7-day period of the signing of this Letter of Intent and shall use best efforts to negotiate and execute the Contract during such time. This paragraph shall be binding upon the parties.

3. Deposit. Upon execution of the Contract, Buyer will deliver a deposit of Two-Hundred Fifty Thousand ($250,000) (the "Deposit") to Seller's Title Company (the "Escrow Agent") and Purchaser will increase the earnest money deposit by One-Hundred Thousand and 00/100 Dollars ($100,000) at the end of the due diligence period.

4. Due Diligence Period. After the execution of the Contract, Buyer will have a Thirty (30) day period (the "Due Diligence Period") during which Buyer may inspect the Property. If Buyer has not terminated this transaction prior to the expiration of the Due Diligence Period then the Deposit shall become non-refundable and the Buyer shall proceed to closing. All monies shall be applicable to the Purchase Price at Closing. During the Due Diligence Period, Buyer shall have the right to terminate the Contract in its sole discretion, whereupon the Deposit, together with any interest earned thereon, shall be returned to the Buyer, the Contract shall be void and the parties shall

FILED DATE: 1/17/2023 11:28 AM  2023CH00444

**EXHIBIT 2**

DocuSign Envelope ID: 7F6F6092-2C23-4808-AFF4-334D7E3C6EDF

FILED DATE: 1/17/2023 11:28 AM   2023CH00444



have no further obligations or recourse against each other.

5. Closing. The closing shall occur on or about Forty-Five (45) days after the Due Diligence Period.

6. Seller's Deliveries. Upon execution of the letter of intent, Seller shall deliver to the Buyer all due diligence items, including recent surveys, title reports, environmental site assessments, rent roll, leases, service agreements and financial statements for the past three years.

7. Commissions.   Seller shall solely be responsible to pay a broker fee to 33 Realty LLC in connection with the transaction described in this letter of intent.

8. Buyer recognizes that 2021 is the year of reassessment of real estate taxes for Cook County. The Assessor has issued proposed assed valuations for Rogers Park Township as follows:

| | | |
|---|---|---|
| 7340 Hoyne | 2020: $2,746,050 | 2021 Proposed: $4,982,790 |
| 1716 North Shore | 2020: $1,617,750 | 2021 Proposed: $3,715,960 |

Additionally, Lakeview Township proposed assessments should be issued soon and we expect the same huge increases.

Buyer recognizes that these proposed assessments are not final and are subject to adjustment by petitioning first to the Cook County Board of Appeals and then to either the Cook County courts or the PTAB Board. Buyer further understands that the properties are being sold with any obligation for filing such appeals resting with the Buyer – but with the full cooperation of the Seller.

Real estate taxes at Closing shall be prorated based upon 100% of the 2020 real estate tax bills. At Closing Seller will deposit an additional 30% of the 2020 real estate tax bills into a joint escrow to be used to pay Seller's portion of the actual real estate tax bills when the 2nd installment of the 2021 real estate tax bills are issued.  Any amount not used as Seller's portion of the re-proration of the real estate taxes shall be returned to Seller.

The foregoing proposal is subject to our entering into a mutually acceptable contract incorporating the terms set forth above, and this proposal (except for Paragraph 2 above) shall not bind either party unless and until there is execution and delivery of a formal contract document.

 If the foregoing accurately sets forth your understanding of our mutual intentions, please execute and return to the undersigned.

DocuSign Envelope ID: 7F5F6892-2C23-4808-AFF4-354D7E3C8EDF



**ROCKWOOD**
CAPITAL GROUP

Very truly yours,

DocuSigned by:

*Yanky Hammer*

FA5101036422474...

By: Yanky Hammer
Rockwood Capital Group, LLC
Accepted and Agreed
Date: _____

7340 by
BCH443 LLC BCH5036, BCH 1716 BCH915

*Manser*

By:

*Careel Halli*

11/11/2021

FILED DATE: 1/17/2023 11:28 AM    2023CH00444

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made as of this 5th day of January, 2022 (the "**Contract Date**"), by and between **BCH7340, LLC**, an Illinois limited liability company ("**Hoyne Seller**"); **BCHCarmen, LLC**, an Illinois limited liability company ("**Carmen Seller**"); **BCHNShore, LLC**, an Illinois limited liability company ("**North Shore Seller**"); and **BCH5036, LLC**, an Illinois limited liability company ("**Sheridan Seller**" and together with Hoyne Seller, Carmen Seller, and North Shore Seller referred to herein as "**Seller**") and **YHCHILL Portfolio LLC**, an Illinois limited liability company ("**Purchaser**").

### Recitals

WHEREAS, Hoyne Seller is the owner of the apartment building located at 7340 North Hoyne, Chicago, Illinois, (the "**Hoyne Property**"), Carmen Seller is the owner of the apartment building located at 915 West Carmen, Chicago, Illinois (the "**Carmen Property**"), North Shore Seller is the owner of the apartment building located at 1716 North Shore, Chicago, Illinois (the "**North Shore Property**"), and Sheridan Seller is the owner of the apartment building located at 5036 North Sheridan, Chicago, Illinois (the "**Sheridan Property**"), all of which are legal described in Exhibit A attached hereto and hereby incorporated by reference, together with all and singular the tenements, hereditaments, easements, outlots, rights of way, rights, privileges and appurtenances, air rights, oils, minerals, gas and hydrocarbons in and to said land, belonging or in any way appertaining thereto, including, without limitation, any streets, ways, alleys, gores, or strip of land adjoining said land (the "**Land**"), and fee simple title owner to the improvements together with all buildings, structures, and other improvements, constructed or placed on the Land and all building equipment, fixtures and goods of every kind and nature to become fixtures on the Land or in any such buildings, structures or other improvements (the "**Improvements**") located on the Land; and

WHEREAS, Seller is the owner of all equipment, mechanical systems, leasehold improvements, and other personal property of every kind and character (excluding property owned by any tenant) and attached to, appurtenant to, located in and used in connection with the operation of the Improvements (said items being collectively referred to herein as the "**Personal Property**"); and

WHEREAS, Seller is the current lessor under certain leases, as may have been amended from time to time, for the Land and the Improvements (collectively the "**Leases**"); and

WHEREAS, Seller owns or holds in connection with the Land, the Improvements, the Personal Property, and the Leases, intangible property, if any, (collectively the "**Intangible Property**") including, but not limited to: (i) the name, if any, of the Land or Improvements, (ii) all transferable licenses and warranties covering the Land, the Improvements, the Personal Property, and the Leases or any part thereof (collectively referred to herein as the "**Warranties**"); and (iii) all transferable permits covering the Land, the Improvements, the Personal Property, and the Leases or any part thereof (collectively referred to herein as the "**Permits**"); and

**EXHIBIT 3**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

WHEREAS, Seller has certain rights under certain contracts or other instruments related to the Land, the Improvements, the Personal Property, the Leases and the Intangible Property (collectively referred to herein as the "**Contracts**"); and

WHEREAS, the Land, the Improvements, the Personal Property, the Leases, the Intangible Property, Warranties, Permits and the Contracts are collectively referred to herein as the "**Property**"); and

WHEREAS, Purchaser desires to purchase the Property and Seller desires to sell the Property upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, Seller and Purchaser agree as follows:

1.    **Purchase and Sale**.  Purchaser agrees to purchase from Seller and Seller agrees to convey to Purchaser, the Property for a purchase price of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000) (the "**Purchase Price**").   Hoyne Seller, Carmen Seller, North Shore Seller, and Sheridan Seller shall convey to Purchaser title to the Hoyne Property, Carmen Property, North Shore Property and Sheridan Property, respectively, by recordable special warranty deeds, with release of homestead rights, if any, subject only to the Permitted Title Exceptions (described below).  The parties hereto agree that there shall be a single Closing and that each party shall have the right to allocate the Purchase Price amongst the Property in each party's sole discretion.

2.    **Deposit**.  Within three (3) Business Days after the execution and delivery of this Agreement to Seller, Purchaser shall deliver to Meister Abstract Corp. the amount of Two Hundred Fifty Thousand Dollars ($250,000) as an earnest money deposit (the "**Initial Deposit**").  The Initial Deposit shall be increased by One Hundred Fifty Thousand Dollars ($150,000) (the "**Additional Deposit**" and together with the Initial Deposit referred to herein as the "**Deposit**") within one (1) Business Day after the date of expiration of the Due Diligence Period (as defined below). The Deposit shall be deposited into a joint order escrow at Meister Abstract Corp. to be established by counsel for the parties within two (2) business days after the Contract Date.  The escrow shall be in the form customarily used by Meister Abstract Corp. in its capacity as an escrow agent

Upon the date of expiration of the Due Diligence Period, Purchaser shall cause Meister Abstract Corp. to deliver the Deposit to Greater Illinois Title Company which shall hold the Deposit pursuant to a joint order escrow to be established simultaneously with Meister Abstract Corp's delivery of the Deposit to Greater Illinois Title Company.

For purposes of this Agreement, whichever entity – Meister Abstract Corp. or Greater Illinois Title Company – is actually holding the Deposit shall be referred to herein as the Escrow Agent.

Purchaser may cause Escrow Agent to invest the Deposit in a money market account established at Escrow Agent's depository.  All interest earned thereon, if any, shall be deemed to be additional Deposit that inures to the benefit of Purchaser upon Closing. The Deposit shall be refundable to Purchaser pursuant to the terms hereof.  The Deposit shall be applied against the Purchase Price, and the balance of the Purchase Price shall be paid via wire at Closing.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

3.     **Due Diligence Period**.  Purchaser shall have a period ("**Due Diligence Period**") of thirty (30) calendar days after the Contract Date within which to make a physical inspection of the Property, perform property appraisals, and otherwise analyze, study, and inspect the Property in all respects as deemed necessary by Purchaser in its sole discretion. Within five (5) days after the Contract Date, Seller shall deliver to Purchaser all relevant documents, reports and studies related to the Property in the possession of Seller and not previously made available to Purchaser, including title commitments, title policies, surveys, a current rent rolls, copies of all leases, tenant ledgers, service agreements, laundry contracts, if any, and other material agreements and documents.  In the event Purchaser shall notify Seller on or before the expiration of the Due Diligence Period that Purchaser declines to purchase the Property for any reason or no reason whatsoever in Purchaser's sole discretion, the Initial Deposit together with interest earned thereon, if any, less Escrow Agent's fees, if any, shall be immediately returned to Purchaser, and this Agreement shall terminate and neither party shall have any further obligations or liabilities to the other hereunder at law or in equity, except for those obligations which expressly survive the termination of this Agreement. In the event Purchaser shall not timely deliver notice of cancellation, the contingency expressed in this paragraph shall be deemed to have been satisfied or waived and the Deposit shall become non-refundable to Purchaser, except in the events as expressly set forth herein.

In connection with tests or inspections of the Property by Purchaser, or its agents, employees or contractors, Purchaser shall indemnify, defend and hold harmless Seller and its partners, members, officers, employees or agents from and against any lien, claim, suit, loss, cost, expense (including reasonable attorneys' fees), personal injury, damage or action arising from any activities of Purchaser, its employees, agents, contractors or engineers on the Property. If this Agreement is terminated or Purchaser does not consummate the Closing, Purchaser at its sole cost shall be responsible for restoring the Property to substantially the same condition that existed prior to the performance of such tests or inspections. Notwithstanding anything to the contrary herein, the indemnification obligations of Purchaser under this Paragraph shall survive the Closing or any termination of this Agreement and Purchaser's obligation to restore the Property shall survive any termination of this Agreement.

4.     **Condition of the Property.**  The provisions of this section shall survive the Closing and not merge into the deed.  Seller is selling and Purchaser is purchasing the Property in its "**existing condition**" without representations or warranties of any kind or nature, except as otherwise expressed herein. Except as otherwise expressed herein, it is understood and agreed that Seller has not made and is not making any warranties or representations of any kind, nature or description.  Except as otherwise expressed herein, neither Seller nor any agent, attorney, employee or representative of Seller has made any representation whatsoever regarding the subject matter of this sale, including (without limiting the generality of the foregoing) any building, lot size or suitability of the Property and/or its improvements for particular purposes or uses, and/or that the improvements are structurally sound and/or in compliance with any city, county, state and/or federal statutes, codes, or ordinances. Except as otherwise expressed herein, Purchaser further acknowledges that it is not relying upon any representation or statement of Seller, or any of Seller's agents with respect to the condition of the Property or any portion thereof in executing this Agreement or proceeding with this transaction. Purchaser agrees to take the Property in its strict "**AS IS, WHERE IS**" condition as of the date hereof, reasonable wear and tear excepted and to rely

3

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

entirely upon its own inspection of the Property. The closing of this transaction shall constitute an acknowledgment by the Purchaser that the Property was accepted without representation or warranty of any kind or nature and in its "**existing condition**" based solely on Purchaser's own inspection.

At Closing, Purchaser expressly assumes all liability with respect to the condition of the Property, including the environmental condition of the Property and waives any claim or rights it may have against Seller with respect thereto, including but not limited to any claim or right of contribution, indemnity or cost recovery under the Comprehensive Environmental Response Compensation and Liabilities Act of 1980, as amended, and under any other federal or state environmental law, rule, regulation or statute. Purchaser agrees that it is purchasing the Property **"AS IS, WHERE IS"** and covenants not to sue Seller, its affiliates, members, officers, employees, agents, heirs, executors, administrators, successors and assigns under any common law or statutory cause of action whether now existing or available in the future for any cost, expenses, fees, liabilities or obligations in any way relating to the environmental condition of the Property or Purchaser's efforts to investigate, clean-up, remove, contain, treat or in any other way address the presence of hazardous materials in, on, at, under or about the Property whether or not such hazardous materials existed on the Property as of the date hereof.

In the event, Purchaser, or its agents, employees or contractors, enter the Property for purpose of any inspections or tests, Purchaser shall indemnify, defend and hold harmless Seller and its partners, members, officers, employees or agents from and against any lien, claim, suit, loss, cost, expense (including reasonable attorneys' fees), personal injury, damage or action arising from any activities of Purchaser, its employees, agents, contractors or engineers on the Property. Purchaser at its sole cost shall be responsible for restoring the Property to substantially the same condition that existed prior to the performance of such tests or inspections. Notwithstanding anything to the contrary herein, the indemnification obligations of Purchaser under this Paragraph shall survive the Closing or any termination of this Agreement and Purchaser's obligation to restore the Property shall survive any termination of this Agreement.

5. **Title and Survey Delivery.** As soon as practical after the Contract Date, Seller shall at Seller's sole cost, deliver to Purchaser a current title commitment for the North Shore Property issued by Greater Illinois Title Company for an owner's ALTA title insurance policy (the "**Greater Illinois Title Commitment**") in a reasonable amount reflective of fair market value together with the underlying title documents. As soon as practical after the Contract Date, Purchaser shall at Seller's sole cost (so long as such cost is no greater than the cost that Greater Illinois Title Company would charge Seller and if such cost is greater, Purchaser shall pay the difference), deliver to Seller a current title commitment for the Hoyne Property, Carmen Property and Sheridan Property issued by Meister Abstract Corp. for an owner's ALTA title insurance policy (the "**Meister Title Commitment**" and together with the Greater Illinois Title Commitment are referred to herein as the ("**Title Commitments**") in a reasonable amount reflective of fair market value together with the underlying title documents. Purchaser shall be responsible for paying for all endorsements to the title policy required by Purchaser or Purchaser's lender, if any, including, but not limited to, an extended coverage endorsement. Seller shall also deliver to Purchaser, within five (5) days following the Contract Date, the survey for each Property in the possession of Seller. Seller shall have no further obligation with respect to the surveys. Purchaser shall have the right, at Purchaser's sole

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

cost and expense, to obtain a survey of the Property (the "Survey"). In the event that Purchaser is unsatisfied with any matter appearing in the Survey or Title Commitments, other than the Permitted Title Exceptions (as defined below), Purchaser may terminate this Agreement by providing written notice to Seller prior to the expiration of the Due Diligence Period, in which event the Initial Deposit shall be immediately refunded to Purchaser.

6.     **Title Exceptions.** The permitted title exceptions shall be (a) utility easements of record; (b) general real estate taxes which are not yet due or payable as of the closing date; (c) covenants, conditions and restrictions of record disclosed on the Title Commitments not caused by Seller; (d) the leases; and (e) any exceptions caused by Purchaser (the "**Permitted Title Exceptions**").

7.     **Prorations.** Rents, security deposits, pre-paid rents, tenant "pass through" or "CAM" charges, if any, water and other utility charges, fuels, prepaid service contracts, and other similar items shall be adjusted ratably as of the time of closing with Seller being entitled to all income and responsible for all expenses related to the Property on the Closing Date defined below. Rents will be assigned and prorated based on actual collections as of the close of business the day before the Closing. If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of the foregoing allocation, the appropriate sum shall be promptly paid to the other party, which obligation expressly shall survive the Closing, with all monies first applied to the month of Closing, and then subsequent months, before prior months.

8.     **Tax Prorations.** Real estate taxes at Closing shall be prorated based upon 100% of the 2020 real estate tax bills. At Closing Seller will deposit an additional 30% of the 2020 real estate tax bills into a joint escrow to be used to pay Seller's portion of the actual real estate tax bills when the Second installment of the 2021 real estate tax bills are issued. Any amount not used as Seller's portion of the re-proration of the real estate taxes shall be returned to Seller. Seller shall be entitled to any real estate tax refund related to any period prior to the Closing Date and such entitlement shall survive the Closing and not merge into the deed.

9.     **Representations and Warranties.** All representations and warranties of Seller set forth in this section and elsewhere in this Agreement shall not survive the Closing and the delivery of the deed and shall merge into the deed. Each of Seller, for such Seller's Property, hereby represents, warrants, and covenants as to the following matters, each of which is so warranted to be true and correct as of the date hereof, and also to be true and correct as of the Closing Date:

A.     Hoyne Seller is the owner of fee simple title to the Hoyne Property, Carmen Seller is the owner of fee simple title to the Carmen Property, North Shore Seller is the owner of fee simple title to the North Shore Property and Sheridan Seller is the owner of fee simple title to the Sheridan Property. Seller has taken all action necessary to enable it to enter into this transaction and consummate the transaction described herein, and no additional authorizations or consents from any persons or entities are required in order to consummate the same.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

B.    Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code and is therefore exempt from the withholding requirements of said Section.  Seller shall furnish Purchaser at closing the Exemption Certification set forth in said Section.

C.    Seller has the full right, power and authority to sell and convey the Property to Purchaser as provided herein and to carry out its obligations hereunder.  This Agreement has been, and the documents contemplated hereby will be, duly executed and delivered by Seller and constitutes its legal, valid and binding obligation enforceable against it in accordance with its terms. The consummation by Seller of the transaction which is the subject of this Agreement will not conflict with or result in a breach of any of the terms of any agreement or instrument to which Seller is a party or by which Seller is bound or constitute a default thereunder, and each person executing and delivering this Agreement and all documents to be executed and delivered by Seller at the Closing has due and proper authority to execute and deliver same.

D.    Seller has received no written notice from any governmental authority having jurisdiction over the Property that the Property is presently the subject of any condemnation or similar proceeding;

E.    There are no actions, suits or proceedings pending, or to Seller's knowledge, threatened, against the Property or against Seller which would prevent Seller from selling to Purchaser the Property, as of the date of this Agreement; and

F.    Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code and is therefore exempt from the withholding requirements of said Section.   Seller shall furnish Purchaser at closing the Exemption Certification set forth in said Section.

10.    **Management**.  At all times prior to closing:

A. Seller shall continue to operate, manage, and maintain the Property in a manner consistent with existing management standards.  Seller will pay, as and when due, Seller's obligations, debts, and liabilities which are associated with the Property.

B. Seller shall cooperate with Purchaser with respect to supplying to Purchaser information and documentation in Seller's possession regarding the Property that shall be required by any prospective lender from which Purchaser intends to obtain financing to purchase the Property.

C. After the expiration of the Due Diligence Period and Purchaser has deposited the Additional Deposit Seller shall: (i) not enter into any service contract unless it is terminable upon not more than thirty (30) days' notice without penalty or premium without the prior consent of Purchaser, and (ii) only enter in to, modify or amend leases in the ordinary course of business and only upon market terms and conditions without the prior consent of

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

Purchaser, which consent shall not be unreasonably withheld, delayed or conditioned.

D.   Seller shall provide to Purchaser a copy of any notice with respect to the Property that Seller receives regarding (i) any eminent domain taking or threatened taking, (ii) any litigation or threatened litigation, (iii) any special assessments, (iv) any violation or alleged violations of any governmental law, rule, regulation, or ordinance. Seller will also immediately notify Purchaser if Seller discovers, determines, or is notified that any warranty or representation of Seller is not (or is no longer) true.

E.   Seller shall reasonably cooperate with Purchaser in the event Purchaser requires access to the Property prior to the Closing Date.

11.    **Closing**. Closing shall be on the forty-fifth (45th) day after the expiration of the Due Diligence Period unless said day is a Saturday, Sunday or an official federal or state holiday and then the closing shall be on the first (1st) day thereafter which shall not be a Saturday or Sunday or an official federal or state holiday, or unless a different date is agreed upon by the parties in writing (the "**Closing Date**").

Closing shall be through an escrow in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then in use by the Escrow Agent, with such provisions inserted in the escrow agreement as may be required to conform to this Agreement. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of the Purchase Price and delivery of deed shall be made through the escrow and this Agreement shall be deposited in the escrow. The cost of the escrow shall be equally borne by Seller and Purchaser. Notwithstanding anything to the contrary contained herein, the Closing shall take place at Greater Illinois Title and may occur as a so called mail-in closing.

At closing the parties shall execute and deliver to each other the usual and customary documents required to consummate the closing of comparable transactions, including, but not limited to, an assignment and assumption of leases, bill of sale, general assignment (e.g. service contracts, intangibles, warranties, etc.), notices to each of the tenants of the Property notifying each tenant of the transfer of the Property by Seller to Purchaser, any affidavits required by Greater Illinois Title Company and Meister Abstract Corp., gap indemnity agreement, FIRPTA, and all other documents that may be reasonably required to consummate the transaction contemplated by this Agreement. The closing statement shall be in form and content that is reasonably mutually acceptable to the parties.

At the closing, Seller shall deliver to Purchaser (i) an updated rent roll covering all Leases and certified by Seller as being complete and accurate on the Closing Date; and (ii) Original Lease and all keys, codes, and passwords to the Property, if any.

At closing, Seller shall pay the amount of any stamp tax imposed by State and County law on the transfer of the title, and shall furnish completed Real Estate Transfer Declarations signed by Seller or Seller's agent in the form required pursuant to the Real Estate Transfer Tax Act of the State of Illinois and the County where the Real Property is located and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

established by any local ordinance with regard to a transfer or transaction tax; such tax required by local ordinance shall be paid by the party set forth in the ordinance.

Seller shall pay the customary closing costs incurred by a Cook County, Illinois seller in a similarly situated position including, but not limited to, the following: title searches and premiums not to exceed those premiums that Greater Illinois Title Company would normally charge Seller; costs of obtaining and recording any releases of liens upon any of the Property required to be released hereunder; trade and other payables relating to the ownership, management, maintenance or operation of the Property with respect to any period prior to the Closing Date; Seller's attorneys' fees; and the stamp tax imposed by the State of Illinois, County of Cook and that portion of the City of Chicago transfer tax designated by ordinance to be paid by Seller.

Purchaser shall pay the following: the cost of the Survey; the cost of inspections, feasibility studies or investigations in connection with Purchaser's due diligence; the costs associated with recording fees for the Deed; Purchaser's attorneys' fees; title searches and premiums that exceed those premiums that Greater Illinois Title Company would normally charge Seller; all charges, if any, incurred for recording any indebtedness payable with the respect to recordation of any mortgage or similar instrument; and that portion of the City of Chicago transfer tax designated by ordinance to be paid by buyer or Purchaser.

12.     **Title, Escrow and Closing Services**.  All title, escrow and closing services shall be provided by Greater Illinois Title Company, 120 North LaSalle Street, Suite 900, Chicago, Illinois 60602 and Meister Abstract Corp., 11 North Airmont Road, Suite 12, Suffern, New York 10901.

13.     **Seller's Remedies Upon Purchaser's Default.**  If Purchaser breaches its covenants or agreements hereunder or fails to close the transaction contemplated under this Agreement on or before the Closing Date and is not otherwise excused of its performance, and Seller is prepared to close the transaction contemplated under this Agreement, then the Deposit, or portion thereof deposited, shall be retained by Seller, as Seller's sole and exclusive remedy, whereupon this Agreement shall terminate, and neither party shall have any further obligations or liabilities to the other hereunder at law or in equity, except for those obligations which expressly survive the termination of this Agreement.

14.     **Purchaser's Remedies Upon Seller's Default**.  If Seller fails to consummate the purchase and sale contemplated herein, then at Purchaser's option, either (i) Purchaser shall receive a return of the Deposit, or portion deposited thereof, and this Agreement shall terminate and neither party shall have any further obligations or liabilities to the other hereunder at law or in equity, except for those obligations which expressly survive the termination of this Agreement, or (ii) Purchaser shall have the right to specific performance of this Agreement.  The remedy of specific performance shall only be available to Purchaser if Purchaser serves notice to Seller's attorney by facsimile, overnight delivery or personal delivery on or before fourteen (14) calendar days after the Closing Date that Purchaser intends to exercise its right to specific performance, files an action for specific performance within thirty (30) calendar days after notice thereof, and diligently pursues said remedy.  In the event that Purchaser seeks specific performance and is successful therein, Purchaser shall ultimately pay the Purchase Price required hereunder at a scheduled closing and Seller

shall have no obligations to perform other than those obligations already required of Seller in this Agreement.

15.　**Notices**.　All notices and other communications required or permitted to be given hereunder shall be in writing and shall be hand delivered, sent via e-mail, sent via reputable overnight delivery (e.g. FedEx, UPS) or mailed by certified or registered mail, postage prepaid, addressed as follows:

> Seller:　　Jay R. Goldberg
> Field and Goldberg, LLC
> 10 South LaSalle Street, Suite 2910
> Chicago, Illinois 60603
> E-Mail: jgoldberg@fieldandgoldberg.com
>
> Purchaser:　Jason R. Harrington
> Harrington Law, PLLC
> 45 East Avenue, Suite 300
> Rochester, New York 14604
> Email: jason@jharrington.law

Any notice by certified or registered mail shall be deemed to have been received three (3) business days after mailing. Any hand delivered notice or notice delivered by overnight express shall be deemed received on the day of delivery if delivered before 5:00 P.M. on a business day, otherwise such notice shall be deemed delivered on the next business day. Any notice sent by e-mail shall be deemed received on the date of transmission if sent before 5:00 P.M. Chicago time on a business day, otherwise such notice shall be deemed received on the next business day.

Each party may change its respective notice address by written notice in accordance herewith.

16.　**Broker**.　Seller and Purchaser each represent and warrant to the other that they have not dealt with any brokers in connection with this transaction except 33 Realty LLC ("**Broker**"). Seller shall pay Broker a commission of 0.75% of the Purchase Price on or before the Closing Date pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify, defend and hold each other harmless from and against any and all claims of any brokers and finders claiming by, through or under them and in any way related to the sale and purchase of the Property pursuant to this Agreement in violation of each such party's representation and warranty aforesaid, including, without limitation, attorneys' fees incurred by the indemnified party in connection with such claims. The foregoing indemnity shall survive the closing and the delivery of the deed and shall not be merged therein.

17.　**Casualty and Condemnation.**　Purchaser shall have the option of terminating this Agreement or closing and receiving the insurance proceeds or condemnation award upon any material casualty damage or any material taking by eminent domain.

18.　**Election of Like-Kind Exchange**.　Seller and Purchaser hereby agree at either party's request, to cooperate with the requesting party in a like-kind exchange ("Like-Kind

FILED DATE: 1/17/2023 11:28 AM　2023CH00444

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

Exchange") of the Property which qualifies for a tax-deferred treatment pursuant to Section 1031 of the Internal Revenue Code, as amended. The non-requesting party shall, at the requesting party's request, enter into such agreements and execute such customary documentation as are reasonably necessary to accomplish the Like-Kind Exchange; provided, however, that (a) the non-requesting party shall not be required to take title to any exchange property to be conveyed to the requesting party; (b) the requesting party shall indemnify the non-requesting party from and against any and all loss, cost or damage to the non-requesting party arising out of its participation in the exchange; and (c) the Closing of the sale of the Property shall not be delayed as a result of the Like-Kind Exchange.

19. **Ownership Entity**. Purchaser, without the consent of Seller, may assign this Agreement to a nominee in which Purchaser or Purchaser's members have an interest .

20. **OFAC**. Each of Seller and Purchaser represents to the other that, to the best of their knowledge, it is not named on any list of Persons, entities and governments issued by the Office of Foreign Assets Control of the United States Department of Treasury ("**OFAC**") pursuant to Executive Order 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten To Commit or Support Terrorism, as in effect on the date hereof, or any similar list issued by OFAC or any other department or agency of the United States (collectively, "**OFAC Lists**"), or included in, owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to; or otherwise associated with any Persons referred to or described in any OFAC Lists.

21. **Seller's Inspection Reservation.** Solely in connection with any lawsuit brought forth by any of the plaintiffs named in the Circuit Court of Cook County, County Department (Chancery Division) under case number 2021-CH-03212, Seller reserves the right upon at least twenty four (24) hours' notice to inspect the North Shore Property after the Closing Date.

22. **Memorandum of Agreement.** Purchaser is prohibited from recording this Agreement or a memorandum of this Agreement against the Property.

23. **Tax Appeals**. Seller represents, and Buyer acknowledges, that Seller, as of the date hereof, is properly and duly appealing the tax assessments for each of the Properties (collectively, the "Tax Appeals"). The parties agree that until the Closing occurs, Seller will be responsible for diligently pursuing the Tax Appeals and thereafter it shall be the obligation of Purchaser.

24. **Miscellaneous**.

    a.    Applicable Law. This Agreement and the transactions contemplated herein shall be governed by and construed under the laws of the State of Illinois and each party hereby consents and subjects itself to the jurisdiction of courts with a situs in Cook County, Illinois. Except to the extent otherwise specifically modified herein, the provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Agreement.

    b.    Time is of the essence of this Agreement.

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

c.     Business Day.  Saturdays, Sundays and official federal or state holidays shall not be counted as business days.

d.     Attorney's Fees. In the event of any litigation between the parties (including appeals) pertaining to this transaction or any dealings of the parties concerning the Property, the non-prevailing party to such litigation shall pay the reasonable legal fees and expenses of the prevailing party.

e.     Entire Agreement.  This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.

f.     Construction.  This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that the Agreement may have been prepared primarily by counsel for one of the parties, it being recognized that both Purchaser and Seller have contributed substantially and materially to the preparation of this Agreement.

g.     Amendments and Modifications. This Agreement may be amended or modified only by a written instrument executed by both parties.

h.     Facsimile/E-mail.  Seller and Purchaser intend to be bound by the signatures on the telecopied or e-mailed document, are aware that the other party will rely on the telecopied or e-mailed signatures, and hereby waive any defenses to the enforcement of the terms of this Agreement based on the form of signature.

i.     Severability.  If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect; provided that the invalidity or unenforceability of such provision does not materially adversely affect the benefits accruing to any party hereunder.

j.     No Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

25.     **Binding Effect.**  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

26.     **Counterparts.**  This Agreement may be executed in separate counterparts, including via .pdf or electronic signatures, and such counterparts, taken together, shall constitute a fully executed and enforceable Agreement.

27.     **Marketing of Premises.** Upon the signing of this Agreement and continuing until the earlier of Closing or this Agreement is terminated, the Property will no longer be marketed to the public and Seller shall not enter into any discussions with any potential brokers or purchasers of the Property. Seller shall not disclose the identity of Purchaser or the terms hereof to any broker or potential party, without Purchaser's written consent.

**(Signatures contained on next page)**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

IN WITNESS WHEREOF, the parties hereto have entered into this Purchase and Sale Agreement on and as of the day and year first written above.

**PURCHASER:**

**YHCHILL Portfolio LLC**, an Illinois limited liability company

By: _____
Name: Jason Harrington
Its: Authorized Signatory

**SELLER:**

**BCH7340, LLC**, an Illinois limited liability company

By: _____
Cameel Halim, its manager,
a licensed real estate broker

**BCHCarmen, LLC**, an Illinois limited liability company

By: _____
Cameel Halim, its manager,
a licensed real estate broker

**BCHNShore, LLC**, an Illinois limited liability company

By: _____
Cameel Halim, its manager,
a licensed real estate broker

**BCH5036, LLC**, an Illinois limited liability company

By: _____
Cameel Halim, its manager,
a licensed real estate broker

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

## EXHIBIT A

## LEGAL DESCRIPTIONS

**Hoyne Property:**

LOTS 6 AND 7 IN MARSHALL'S SUBDIVISION OF LOT 4 IN COUNTY CLERK'S DIVISION OF PART OF THE SOUTHWEST FRACTIONAL 114 OF FRACTIONAL SECTION 30, TOWNSHIP 41 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address: 7340 North Hoyne, Chicago, Illinois
Permanent Index Number of 11-30-314-012-0000

**Carmen Property:**

LOT 8 IN THE SUBDIVISION OF SUB-BLOCK 3 IN THE SUBDIVISION OF BLOCK 5 IN ARGYLE IN THE SOUTHEAST FRACTIONAL ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 28, 1901 AS DOCUMENT NO. 3058638 IN COOK COUNTY, ILLINOIS.

Address: 915 West Carmen, Chicago, Illinois
Permanent Index Number of 14-08-408-009-0000

**North Shore Property:**

LOTS 6, 7, 8 AND 9 IN BLOCK 2 IN WILLIAM L. WALLEN'S ADDITION TO ROGERS PARK, BEING A SUBDIVISION OF LOTS 2 AND 3 (EXCEPT THE WEST 17 FEET THEREOF CONVEYED TO THE CHICAGO AND NORTHWESTERN RAILROAD COMPANY) IN THE SUBDIVISION OF THE NORTHEAST ¼ OF THE SOUTHEAST ¼ OF SECTION 31, TOWNSHIP 41 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN (LYING EAST OF THE CHICAGO AND NORTHWESTERN RAILROAD) IN COOK COUNTY, ILLINOIS.

Address: 1716 North Shore, Chicago, Illinois
Permanent Index Number of 11-31-407-009-0000

**Sheridan Property:**

LOT 21 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) AND LOT 22 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) IN BLOCK 6 IN ARGYLE, A SUBDIVISION OF LOTS 1 AND 2 IN FUSSEY AND FENNIMORE'S SUBDIVISION OF THE SOUTHEAST ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN AND OF LOTS 1 AND 2 IN COLEHOUR AND CONARROES SUBDIVISION OF LOT 3 IN FUSSEY AND FENNIMORES SUBDIVISION AFORESAID, ALL IN COOK COUNTY, ILLINOIS.

Address: 5036 North Sheridan, Chicago, Illinois
Permanent Index Numbers of 14-08-406-012-0000 and 14-08-406-013-0000



**REAL ESTATE AND TAX SERVICE**
**OFFICE OF COOK COUNTY CLERK KAREN A. YARBROUGH**
118 N. Clark Street, Room 434, Chicago, Illinois 60602

TEL 312.603.5645   FAX 312.603.4707   WEB cookcountyclerk.com

I CERTIFY THAT, ACCORDING TO THE RECORDS HELD BY THE COOK COUNTY CLERK'S OFFICE, THE TAX PARCEL
WHICH IS KNOWN BY THE PERMANENT REAL ESTATE INDEX NUMBER (PIN) OF:

## 14 - 08 - 406 - 012 - 0000

CORRESPONDS TO THE FOLLOWING LEGAL DESCRIPTION:

LOT 22 IN BLOCK 6 IN ARGYLE SUBDIVISION, A SUBDIVISION OF LOT 1 AND 2 OF FUSSEY &

FENNIMORE'S SUBDIVISION AND LOTS 1 AND 2 OF COLEHOUR & CONARROE'S SUBDIVISION

OF LOT 3 IN SECTION 8 TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN,

IN COOK COUNTY, ILLINOIS.



_____    , 1-17-23

    *COOK COUNTY CLERK*        /      *DATE*

**GROUP EXHIBIT 4**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

FILED DATE: 1/17/2023 11:28 AM 2023CH00444



**REAL ESTATE AND TAX SERVICE**
**OFFICE OF COOK COUNTY CLERK KAREN A. YARBROUGH**
118 N. Clark Street, Room 434, Chicago, Illinois 60602

TEL 312.603.5645 FAX 312.603.4707 WEB cookcountyclerk.com

I CERTIFY THAT, ACCORDING TO THE RECORDS HELD BY THE COOK COUNTY CLERK'S OFFICE, THE TAX PARCEL
WHICH IS KNOWN BY THE PERMANENT REAL ESTATE INDEX NUMBER (PIN) OF:

## 14 - 08 - 406 - 013 - 0000

CORRESPONDS TO THE FOLLOWING LEGAL DESCRIPTION:

LOT 21 IN BLOCK 6 IN ARGYLE SUBDIVISION, A SUBDIVISION OF LOT 1 AND 2 OF FUSSEY &
FENNIMORE'S SUBDIVISION AND LOTS 1 AND 2 OF COLEHOUR & CONARROE'S SUBDIVISION
OF LOT 3 IN SECTION 8 TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN,
IN COOK COUNTY, ILLINOIS.



_COOK COUNTY CLERK_          /          _DATE_

1-17-23



EXHIBIT 5

**5036 Sheridan**

**Rent Roll**

January 2022

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

| Apt # | Tenant Name | Size | Lease End Date | Rent |
|-------|-------------|------|----------------|------|
| 101 | Plernchit Keokhumcheng | 1B | 01/31/22 | $904.00 |
| 102 | Wilmette Real Estate | SK | 12/31/22 | $852.00 |
| 103 | Nguteh | S | 01/31/23 | $815.00 |
| 104 | Li Chang Li | S | 01/31/22 | $804.00 |
| 105 | Timothy Madsen | SK | 12/31/22 | $841.00 |
| 106 | Matthew R. Baer | 1B | 01/31/22 | $955.00 |
| 107 | Dorothy Manuel | 1B | 07/31/22 | $670.00 |
| 201 | Modesta Key | 1B | 01/31/22 | $1,099.00 |
| 202 | Anthony J. Nesbitt III | SK | 01/31/23 | $892.00 |
| 203 | * * V A C A N T * * | S | | $825.00 |
| 204 | Trenae Brooks | S | 08/31/22 | $825.00 |
| 205 | Derick Evans | SK | 01/31/22 | $849.00 |
| 206 | * * V A C A N T * * | 1B | | $1,055.00 |
| 207 | Tammie M.Ford | 1B | 04/30/22 | $1,025.00 |
| 208 | Elfeneh Belay | S | 12/31/22 | $814.00 |
| 209 | Pacifico Saguin Cimafranca | S | 12/31/22 | $844.00 |
| 210 | Charles Johnson | SK | 11/30/21 | $864.00 |
| 211 | Beyonka Triplett | SKD | 12/31/21 | $954.00 |
| 212 | Triplett | 1B | 01/31/23 | $1,118.00 |
| 301 | MD Zabed Hashim | 1B | 06/30/22 | $1,140.00 |
| 302 | Hamed Awobona | SK | 08/31/22 | $875.00 |
| 303 | Modestus Obioma | S | 12/31/22 | $820.00 |
| 304 | Khalil Washinton | S | 12/31/22 | $819.00 |
| 305 | * * V A C A N T * * | SK | | $870.00 |
| 306 | Habib Amidou | 1B | 01/31/22 | $994.00 |
| 307 | Norman Bryant | 1B | 06/30/22 | $1,035.00 |
| 308 | Adam M. Pauley | S | 05/31/22 | $849.00 |
| 309 | Jason Ward | S | 01/31/22 | $830.00 |
| 310 | Effie M. Harris | SK | 01/31/22 | $894.00 |
| 311 | Derrick Burke | SKD | 07/31/22 | $979.00 |
| 312 | Eliduvina Sandoval | 1B | 04/30/22 | $1,025.00 |
| 401 | Maruelne Ansah | 1B | 05/30/22 | $1,025.00 |
| 402 | Kofi Bejabeng | SK | 01/31/22 | $872.00 |
| 403 | Lauren C. Schaeffer | S | 06/30/22 | $835.00 |
| 404 | Anne Mariz Dizon | S | 01/31/22 | $860.00 |
| 405 | Patrick Day | SK | 04/30/22 | $870.00 |
| 406 | Andrew K. Lewis | 1B | 01/31/22 | $1,095.00 |
| 407 | Perry Ransome Jr | 1B | 06/30/22 | $1,025.00 |
| 408 | Matthew R. Boulette | S | 05/31/22 | $835.00 |
| 409 | Darren Spires | S | 04/30/22 | $950.00 |
| 410 | Joel Mutesasira | SK | 12/31/22 | $880.00 |
| 411 | Jason Whitmore | SKD | 04/30/22 | $964.00 |

**EXHIBIT 6**

**5036 Sheridan**

**Rent Roll**

January 2022

| Apt # | Tenant Name | Size | Lease End Date | Rent |
|-------|-------------|------|----------------|------|
| 412 | Stuart Hansom | 1B | 12/31/22 | $1,120.00 |
| 501 | Belal Uddin | 1B | 01/31/22 | $1,160.00 |
| 502 | Rashann Clowers | SK | 02/28/22 | $907.00 |
| 503 | * * V A C A N T * * | S | | $855.00 |
| 504 | * * V A C A N T * * | S | | $855.00 |
| 505 | Maria Alexandre Goncalves | SK | 05/31/22 | $950.00 |
| 506 | Michael Angel Garcia | 1B | 05/31/22 | $1,069.00 |
| 507 | Oriyomi Obasa | 1B | 01/31/22 | $1,069.00 |
| 508 | Joe L. Brown | S | 01/31/23 | $885.00 |
| 509 | * * V A C A N T * * | S | | $855.00 |
| 510 | Judith Reinhold | SK | 12/31/22 | $880.00 |
| 511 | Zavier Hairston | SKD | 12/31/22 | $955.00 |
| 512 | Rodolfo Garcia | 1B | 01/31/22 | $1,120.00 |
| 601 | Carlos Cuarta | 1B | 12/31/22 | $1,164.00 |
| 602 | Alexander E. Rivera | SK | 12/31/22 | $877.00 |
| 603 | WilliamJohn Darwin | S | 06/30/22 | $979.00 |
| 604 | Rigoberto Rico Cervantes | S | 05/31/22 | $855.00 |
| 605 | Shyheim Harris | SK | 04/30/22 | $950.00 |
| 606 | Palmer Smith | 1B | 05/31/22 | $1,025.00 |
| 607 | Klea Kahari | 1B | 01/31/23 | $1,100.00 |
| 608 | Rebecca Ratliff | S | 01/31/22 | $885.00 |
| 609 | David K. Thayer | S | 09/30/22 | $855.00 |
| 610 | Maurice | SK | 01/31/23 | $889.00 |
| 611 | Sidney S. Thompson | SKD | 06/30/22 | $965.00 |
| 612 | Mohammed Chowdhury | 1B | 05/31/22 | $1,153.00 |
| 701 | Raul Cordero | 1B | 05/31/22 | $1,205.00 |
| 702 | Daniel Mendez | 1B | 07/31/22 | $1,175.00 |
| STORE I | * * V A C A N T * * | STORE | | $1,400.00 |
| STORE II | Hati M. Godil | STORE | 04/30/24 | $2,000.00 |

|  | Occupancy Rate: | 90.1% | Total: | $68,503.00 |
|--|-----------------|-------|--------|------------|
|  |  |  | Total Rental Income: | $68,503.00 |

**Rent Roll Report**
**Building 5036SHE**
**Run Date: 03/24/22 (10:17AM)**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

| Bldg Code Apt # | Tenant | Size | Current Rent | Lease # | Lease Start Date | Lease End Date | Deposit Type | Deposit Amount |
|---|---|---|---|---|---|---|---|---|
| 5036SHE*101 | Plernchit Keokhumcheng | 1B | $965.00 | R30542 | 02/01/22 | 01/31/23 | None | |
| 5036SHE*102 | Wilmette Real Estate | SK | $805.00 | | 02/01/22 | 01/31/23 | None | |
| 5036SHE*103 | Hong Thi Ngoov Nguyen | S | $820.00 | 48043 | 01/10/22 | 01/31/24 | LMR | $820.00 |
| 5036SHE*104 | Li Chang Li | S | $855.00 | R30543 | 02/01/22 | 01/31/24 | LMR | $855.00 |
| 5036SHE*105 | Timothy Madsen | SK | $841.00 | R29727 | 02/01/21 | 12/31/22 | LMR | $841.00 |
| 5036SHE*106 | Matthew R. Baer | 1B | $955.00 | R30420 | 07/01/21 | 01/31/22 | None | |
| 5036SHE*107 | Dorothy Manuel | S | $670.00 | 47055 | 08/01/20 | 07/31/22 | None | |
| 5036SHE*201 | Modesta Key | 1B | $1,165.00 | R30545 | 02/01/22 | 01/31/24 | LMR | $1,165.00 |
| 5036SHE*202 | Anthony J. Nesbitt III | SK | $892.00 | R30421 | 11/01/21 | 01/31/23 | LMR | $892.00 |
| 5036SHE*203 | * *  V A C A N T  * * | S | $780.00 | | | | | |
| 5036SHE*204 | Trenae Brooks | S | $825.00 | 47122 | 09/01/20 | 08/31/22 | LMR | $825.00 |
| 5036SHE*205 | Derick Evans | SK | $849.00 | R28412 | 02/01/19 | 01/31/22 | LMR | $849.00 |
| 5036SHE*206 | * *  V A C A N T  * * | 1B | $975.00 | | | | | |
| 5036SHE*207 | * *  V A C A N T  * * | 1B | $975.00 | | | | | |
| 5036SHE*208 | Elfeneh Belay | S | $814.00 | R29729 | 02/01/21 | 12/31/22 | None | |
| 5036SHE*209 | Pacifico Saguin Cimafran | S | $844.00 | R29730 | 02/01/21 | 12/31/22 | None | |
| 5036SHE*210 | Charles Johnson | SK | $979.00 | 48090 | 01/26/22 | 01/31/23 | None | |
| 5036SHE*211 | Beyonka Triplett | SKD | $954.00 | 47294 | 01/21/21 | 12/31/21 | None | |
| 5036SHE*212 | * *  V A C A N T  * * | 1B | $1,035.00 | | | | | |
| 5036SHE*301 | MD Zabed Hashim | 1B | $1,140.00 | 46903 | 07/01/20 | 06/30/22 | None | |

**Page: 1**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

**Rent Roll Report**
**Building 5036SHE**
**Run Date: 03/24/22  (10:17AM)**

| Bldg Code Apt. # | Tenant | Size | Current Rent | Lease # | Lease Start Date | Lease End Date | Deposit Type | Deposit Amount |
|---|---|---|---|---|---|---|---|---|
| 5036SHE*302 | Hamed Awobona | SK | $875.00 | 47110 | 09/01/20 | 08/31/22 | None | |
| 5036SHE*303 | Modestus Obioma | S | $820.00 | R29731 | 03/01/21 | 12/31/22 | LMR | $820.00 |
| 5036SHE*304 | Khalil Washinton | S | $819.00 | R29732 | 02/01/21 | 12/31/22 | LMR | $819.00 |
| 5036SHE*305 | * * V A C A N T * * | SK | $825.00 | | | | | |
| 5036SHE*306 | Habib Amidou | 1B | $1,055.00 | R30547 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*307 | Norman Bryant | 1B | $1,035.00 | 47737 | 07/19/21 | 06/30/22 | None | |
| 5036SHE*308 | Adam M. Pauley | S | $849.00 | R30426 | 07/01/21 | 05/31/22 | None | |
| 5036SHE*309 | Jason Ward | S | $880.00 | R30548 | 02/01/22 | 01/31/24 | LMR | $880.00 |
| 5036SHE*310 | * * V A C A N T * * | SK | $825.00 | | | | | |
| 5036SHE*311 | Derrick Burke | SKD | $979.00 | 47864 | 08/31/21 | 07/31/22 | None | |
| 5036SHE*312 | Eliduvina Sandoval | 1B | $1,025.00 | 47558 | 05/17/21 | 04/30/22 | None | |
| 5036SHE*401 | Maruelne Ansah | 1B | $1,025.00 | 47561 | 06/18/21 | 05/30/22 | None | |
| 5036SHE*402 | Kofi Bejabeng | SK | $927.00 | R30550 | 02/01/22 | 01/31/24 | LMR | $927.00 |
| 5036SHE*403 | Lauren C. Schaeffer | S | $835.00 | 46979 | 07/10/20 | 06/30/22 | None | |
| 5036SHE*404 | * * V A C A N T * * | S | $785.00 | | | | | |
| 5036SHE*405 | Patrick Day | SK | $979.00 | 48066 | 01/11/22 | 01/31/23 | None | |
| 5036SHE*406 | Andrew K. Lewis | 1B | $1,170.00 | R30551 | 02/01/22 | 07/31/22 | None | |
| 5036SHE*407 | * * V A C A N T * * | 1B | $1,020.00 | | | | | |
| 5036SHE*408 | Matthew R. Boulette | S | $835.00 | 46952 | 07/01/20 | 05/31/22 | LMR | $835.00 |
| 5036SHE*409 | Darren Spires | S | $950.00 | 47571 | 05/24/21 | 04/30/22 | None | |

FILED DATE: 1/17/2023 11:28 AM  2023CH00444

Rent Roll Report
Building 5036SHE
Run Date: 03/24/22 (10:17AM)

| Bldg Code Apt. # | Tenant | Size | Current Rent | Lease # | Lease Start Date | Lease End Date | Deposit Type | Deposit Amount |
|---|---|---|---|---|---|---|---|---|
| 5036SHE*410 | Joel Mutesasira | SK | $880.00 | R29736 | 02/01/21 | 12/31/22 | LMR | $880.00 |
| 5036SHE*411 | Jason Whitmore | SKD | $964.00 | 47511 | 05/12/21 | 04/30/22 | None | |
| 5036SHE*412 | Stuart Hanson | 1B | $1,120.00 | R29737 | 02/01/21 | 12/31/22 | None | |
| 5036SHE*501 | Belal Uddin | 1B | $1,230.00 | R30552 | 02/01/22 | 06/30/22 | LMR | $1,230.00 |
| 5036SHE*502 | Rashann Clowers | SK | $907.00 | 48078 | 03/01/22 | 09/30/22 | None | |
| 5036SHE*503 | * *  V A C A N T  * * | S | $810.00 | | | | | |
| 5036SHE*504 | * *  V A C A N T  * * | S | $810.00 | | | | | |
| 5036SHE*505 | Maria Alexandre Goncalve | SK | $950.00 | 47604 | 06/04/21 | 05/31/22 | None | |
| 5036SHE*506 | Michael Angel Garcia | 1B | $1,069.00 | 47069 | 09/01/20 | 05/31/22 | LMR | $1,069.00 |
| 5036SHE*507 | Oriyomi Obasa | 1B | $1,069.00 | 47148 | 10/01/20 | 01/31/22 | None | |
| 5036SHE*508 | Joe L. Brown | S | $885.00 | R30429 | 12/01/21 | 01/31/23 | None | |
| 5036SHE*509 | * *  V A C A N T  * * | S | $810.00 | | | | | |
| 5036SHE*510 | Judith Reinhold | SK | $880.00 | R29739 | 02/01/21 | 12/31/22 | None | |
| 5036SHE*511 | Zavier Hairston | SKD | $955.00 | R29740 | 06/01/21 | 12/31/22 | LMR | $955.00 |
| 5036SHE*512 | Rodolfo Garcia | 1B | $1,193.00 | R30554 | 02/01/22 | 01/31/24 | LMR | $1,193.00 |
| 5036SHE*601 | Carlos Cuarta | 1B | $1,164.00 | R29741 | 02/01/22 | 12/31/22 | LMR | $1,164.00 |
| 5036SHE*602 | Alexander E. Rivera | SK | $877.00 | R29742 | 06/01/21 | 12/31/22 | LMR | $877.00 |
| 5036SHE*603 | WilliamJohn Darwin | S | $979.00 | 47776 | 07/30/21 | 06/30/22 | None | |
| 5036SHE*604 | Rigoberto Rico Cervantes | S | $855.00 | 46884 | 06/01/20 | 05/31/22 | LMR | $855.00 |
| 5036SHE*605 | Shyhelm Harris | SK | $950.00 | 47560 | 05/17/21 | 04/30/22 | None | |

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

**Rent Roll Report**
**Building 5036SHE**
**Run Date: 03/24/22  (10:17AM)**

| Bldg Code Apt # | Tenant | Size | Current Rent | Lease # | Lease Start Date | Lease End Date | Deposit Type | Deposit Amount |
|---|---|---|---|---|---|---|---|---|
| 5036SHE*606 | Robert Lopez | 1B | $1,153.00 | 48051 | 01/20/22 | 01/31/23 | None | |
| 5036SHE*607 | Klea Kahari | 1B | $1,100.00 | 47895 | 10/01/21 | 01/31/23 | None | |
| 5036SHE*608 | Rebecca Ratliff | S | $940.00 | R30555 | 02/01/22 | 01/31/23 | LMR | $940.00 |
| 5036SHE*609 | David K. Thayer | S | $979.00 | 48165 | 03/02/22 | 03/31/23 | None | |
| 5036SHE*610 | Davis D. Maurice | SK | $889.00 | 48038 | 02/04/22 | 01/31/23 | LMR | $889.00 |
| 5036SHE*611 | Sidney S. Thompson | SKD | $965.00 | 47654 | 07/01/21 | 06/30/22 | LMR | $965.00 |
| 5036SHE*612 | Mohammed Chowdhury | 1B | $1,153.00 | 46749 | 07/01/20 | 05/31/22 | None | |
| 5036SHE*701 | Raul Cordero | 1B | $1,205.00 | R30433 | 08/01/21 | 05/31/22 | None | |
| 5036SHE*702 | Daniel Mendez | 1B | $1,175.00 | 47054 | 08/01/20 | 07/31/22 | LMR | $1,175.00 |
| 5036SHE*STORE I | * * V A C A N T * * | STORE | $1,400.00 | | | | | |
| 5036SHE*STORE II | Hati M. Godil | STORE | $2,000.00 | 30564 | 06/01/03 | 04/30/24 | SEC | $1,219.92 |
| 5036SHE*PARK-1 | Wilmette Real Estate | P | $105.00 | 41763 | 02/01/14 | 12/31/22 | None | |
| 5036SHE*PARK-2 | Wilmette Real Estate | P | $105.00 | 46622 | 11/01/19 | 12/31/22 | None | |
| 5036SHE*PARK-3 | Horizon Realty Group | P | $135.00 | R30559 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*PARK-4 | Nova R. Merchant | P | $105.00 | 48020 | 11/15/21 | 11/30/22 | None | |
| 5036SHE*PARK-5 | Wilmette Real Estate | P | $105.00 | 40759 | 02/01/13 | 12/31/22 | None | |
| 5036SHE*PARK-6 | Plenchit Keokhumcheng | P | $135.00 | R30561 | 02/01/22 | 01/31/23 | None | |
| 5036SHE*PARK-7 | Stuart Hanson | P | $105.00 | 47400 | 03/11/21 | 02/28/22 | None | |
| 5036SHE*PARK-8 | Timothy Madsen | P | $135.00 | R30562 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*PARK-9 | Pacifico Saguin Cimafran | P | $105.00 | R29753 | 02/01/21 | 12/31/22 | None | |

**Page: 4**

FILED DATE: 1/17/2023 11:28 AM  2023CH00444

**Rent Roll Report**
**Building 5036SHE**
Run Date: 03/24/22 (10:17AM)

| Bldg Code Apt # | Tenant | Size | Current Rent | Lease # | Lease Start Date | Lease End Date | Deposit Type | Deposit Amount |
|---|---|---|---|---|---|---|---|---|
| 5036SHE*606 | Robert Lopez | 1B | $1,153.00 | 48051 | 01/20/22 | 01/31/23 | None | |
| 5036SHE*607 | Klea Kahari | 1B | $1,100.00 | 47895 | 10/01/21 | 01/31/23 | None | |
| 5036SHE*608 | Rebecca Ratliff | S | $940.00 | R30555 | 02/01/22 | 01/31/23 | LMR | $940.00 |
| 5036SHE*609 | David K. Thayer | S | $979.00 | 48165 | 03/02/22 | 03/31/23 | None | |
| 5036SHE*610 | Davis D. Maurice | SK | $889.00 | 48038 | 02/04/22 | 01/31/23 | LMR | $889.00 |
| 5036SHE*611 | Sidney S. Thompson | SKD | $965.00 | 47654 | 07/01/21 | 06/30/22 | LMR | $965.00 |
| 5036SHE*612 | Mohammed Chowdhury | 1B | $1,153.00 | 46749 | 07/01/20 | 05/31/22 | None | |
| 5036SHE*701 | Raul Cordoro | 1B | $1,205.00 | R30433 | 08/01/21 | 05/31/22 | None | |
| 5036SHE*702 | Daniel Mendez | 1B | $1,375.00 | 47054 | 08/01/20 | 07/31/22 | LMR | $1,175.00 |
| 5036SHE*STORE I | * * V A C A N T * * | STORE | $1,400.00 | | | | | |
| 5036SHE*STORE II | Hati M. Godil | STORE | $2,000.00 | 30564 | 06/01/03 | 04/30/24 | SEC | $1,219.92 |
| 5036SHE*PARK-1 | Wilmette Real Estate | P | $105.00 | 41763 | 02/01/14 | 12/31/22 | None | |
| 5036SHE*PARK-2 | Wilmette Real Estate | P | $105.00 | 46622 | 11/01/19 | 12/31/22 | None | |
| 5036SHE*PARK-3 | Horizon Realtey Group | P | $135.00 | R30559 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*PARK-4 | Nova R. Merchant | P | $105.00 | R30559 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*PARK-5 | Wilmette Real Estate | P | $105.00 | 40759 | 03/01/13 | 12/31/22 | None | |
| 5036SHE*PARK-6 | Pierachit Keckathmcheng | P | $135.00 | R30561 | 02/01/22 | 01/31/23 | None | |
| 5036SHE*PARK-7 | Stefani Hanson | P | $105.00 | 47400 | 03/11/21 | 02/28/22 | None | |
| 5036SHE*PARK-8 | Timothy Madsen | P | $135.00 | R30562 | 02/01/22 | 01/31/24 | None | |
| 5036SHE*PARK-9 | Pacifico Saguin Cimafran | P | $105.00 | R29753 | 02/01/21 | 12/31/22 | None | |

**5036SHE Rent Analysis**

**Run Date: 03/24/22 (10:17AM)**

FILED DATE: 1/17/2023 11:28 AM    2023CH00444

| | |
|---|---|
| Total Current Rent (occupied units): | $57,112.00 |
| Total Pre-Leased Rent (future signed leases): | $135.00 |
| Total WRE Occupied Rent (2 offices): | $910.00 |
| Total WRE Occupied Rent (0 models): | $.00 |
| Total WRE Occupied Rent (0 employees): | $.00 |
| Total Vacant Rent (12 rentable vacant units): | $11,050.00 |
| | |
| Total Rent Possible (71 total units): | $69,207.00 |
| % Rent Possible: | 84.03 |

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

**Document Prepared By**:
Jay R. Goldberg
Field and Goldberg, LLC
10 South LaSalle Street, Suite 2910
Chicago, Illinois 60603

**Mail Recorded Deed To**:
Jason Harrington
Harrington Law, PLLC
45 East Avenue, Suite 300
Rochester, NY 14604

**Mail Tax Bills To**:
Sheridan Mazel LLC
777 Chestnut Ridge Road
Chestnut Ridge, NY 10977



Doc# 2209140034 Fee $88.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A. YARBROUGH
COOK COUNTY CLERK
DATE: 04/01/2022 01:54 PM  PG:  1 OF 3

# SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED is made as of this 28th day of March, 2022 by and between **BCH5036, LLC**, an Illinois limited liability company, of Wilmette, Illinois ("Grantor"), and **SHERIDAN MAZEL LLC**, a New York limited liability company, ("Grantee"), its successors and assigns, whose address is 777 Chestnut Ridge Road, Chestnut Ridge, NY 10977

**Grantor,** for and in consideration of the sum of Ten and No/100 Dollars ($10.00) paid to Grantor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL AND CONVEY AND WARRANT unto **Grantee,** all of Grantor's interest in the real property located in Cook County, Illinois, and being more particularly described hereto (the "Property"):

LOT 21 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) AND LOT 22 (EXCEPT THE EAST 7 FEET TAKEN FOR SHERIDAN ROAD) IN BLOCK 6 IN ARGYLE, A SUBDIVISION OF LOTS 1 AND 2 IN FUSSEY AND FENNIMORE'S SUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN AND OF LOTS 1 AND 2 IN COLEHOUR AND CONARROES SUBDIVISION OF LOT 3 IN FUSSEY AND FENNIMORES SUBDIVISION AFORESAID, ALL IN COOK COUNTY, ILLINOIS.

**Permanent Index No.:**     14-08-406-012-0000 and 14-08-406-013-0000

**Address of Property:**     5036-5042 N. Sheridan Road, Chicago, Illinois 60640

TO HAVE AND TO HOLD said Property to Grantee and Grantee's successors and assigns forever. Grantor hereby binds itself and its successors to warrant and defend the title with respect to matters arising from Grantor's actions during the period in which Grantor has owned the Property and no other, subject to the matters shown on Exhibit "A" attached hereto and made a part hereof.

**EXHIBIT 7**

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

**IN WITNESS WHEREOF**, Grantor has caused this instrument to be executed and delivered by its Manager, as of the day and year first above written.

**BCH5036, LLC,**
**an Illinois limited liability company**

By: _____
Cameel Halim, Manager

STATE OF ILLINOIS          )
                          ) SS
COUNTY OF COOK            )

I, the undersigned, a Notary Public, in and for the County and State aforesaid, DO HEREBY CERTIFY, that Cameel Halim, the Manager of BCH5036, LLC, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as said Manager he signed, sealed and delivered the said instrument as his free and voluntary act, and the free and voluntary act of BCH5036, LLC for the uses and purposes therein set forth.

Given under my hand and official seal, this 24th day of March, 2022

Commission expires _____

_____
NOTARY PUBLIC

OFFICIAL SEAL
GAIL L CANDELA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/05/22

| REAL ESTATE TRANSFER TAX | | 01-Apr-2022 |
|---|---|---|
| CHICAGO: | | 70,185.00 |
| CTA: | | 28,074.00 |
| TOTAL: | | 98,259.00 * |

14-08-406-013-0000 | 20220301662446 | 2-090-075-024
* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 01-Apr-2022 |
|---|---|---|
| COUNTY: | | 4,679.00 |
| ILLINOIS: | | 9,358.00 |
| TOTAL: | | 14,037.00 |

14-08-406-013-0000 | 20220301662446 | 0-458-490-768

FILED DATE: 1/17/2023 11:28 AM   2023CH00444

EXHIBIT "A"

Permitted Exceptions

1.  GENERAL REAL ESTATE TAXES FOR THE YEAR 2021 AND SUBSEQUENT TAX YEARS.

2.  GRANT OF EASEMENT IN FAVOR OF COMCAST OF CHICAGO, INC. DATED 07/01/2005, RECORDED ON 12/09/2005 AS DOCUMENT NO. 0534303101, OF THE COUNTY RECORDS.

3.  GRANT OF EASEMENT IN FAVOR OF COMCAST OF FLORIDA/GEORGIA/ILLINOIS/MICHIGAN, LLC, DATED 05/15/2015, RECORDED ON 09/30/2015, AS DOCUMENT NO. 1527329128, OF THE COUNTY RECORDS.

4.  EXISTING UNRECORDED LEASES, IF ANY.

3